## A09A0251. WALKER v. THE STATE.
(679 SE2d 814)

DOYLE, Judge.

In 2003, a Muscogee County jury found Robert M. Walker guilty of one count of making terroristic threats[1] and one count of aggravated assault.[2] Walker was granted an out-of-time appeal, and after his motion for new trial was denied, he filed the instant appeal. On appeal, Walker challenges the trial court's denial of his motion for directed verdict based on the sufficiency of the evidence as to both counts and argues that trial counsel was ineffective. Finding no

---

[15] *Marchman & Sons, Inc.*, 251 Ga. at 477.

[16] See *Tenneco Oil Co.*, 201 Ga. App. at 30.

[17] See id.

[18] See id. at 35.

[1] OCGA § 16-11-37 (d) (2).

[2] OCGA § 16-5-21 (a) (2).

266

error, we affirm Walker's convictions.

The standard of review of a trial court's denial of a motion for directed verdict is the same as the standard of review for sufficiency of evidence claims announced in *Jackson v. Virginia*[3] — "whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense[s]. . . ."[4] "[W]e view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility. . . ."[5]

So viewed, the record reveals that on September 17, 2008, Walker confronted a man about the man's relationship with Katisha Kelly, whom Walker had been dating for about two months. Walker became angry over some of the man's statements, and he punched Kelly in the face, causing her to bleed and knocking her to the ground. As she attempted to run from him, Walker caught Kelly and punched her in the side of her face, pulled her hair, and drove her face into his knee before she was able to break free for a second time. Again, Walker caught Kelly and repeatedly hit her in the face with his fist; Kelly "stop counting" after he hit her the fifth time. Walker only stopped the attack when the man he had originally confronted interceded and convinced Walker to leave before the police arrived on the scene. An ambulance was called for Kelly, whose eyes were swollen shut, cheek was swollen and bulging, lip was bleeding, and nose was bloodied. At the hospital, it was determined that Kelly's right eyeball was damaged, and blood had hemorrhaged into the white of her eye.

When Kelly returned home from the hospital, Walker repeatedly called Kelly, cursing her for calling the police and threatening to come to her home, kick in her door, and injure her further. Kelly's roommate recognized Walker's aunt's phone number on the telephone's caller identification, and Kelly's roommate heard some of the threats. Kelly's roommate testified that Kelly would start crying and become upset each time Walker called.

After three days of receiving the phone calls, Kelly called the police to report the threats. Walker again called, this time while the responding officer was at Kelly's apartment, and after Kelly answered the phone, she handed it to the officer. The officer heard Walker say, "[Y]ou bitch, I'm going to get you. You called the police on me. I'm going to kill you bitch." Emergency services gave the

---

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] (Punctuation and footnote omitted.) *Cornette v. State*, 295 Ga. App. 877, 880-881 (3) (673 SE2d 531) (2009).

[5] (Citation omitted.) *Burton v. State*, 293 Ga. App. 822, 823 (668 SE2d 306) (2008).

officer the address of the residence where the call had originated, which was the home of Walker's aunt, with whom he was known to be living at the time. Thereafter, Walker was arrested and charged with aggravated assault and making terroristic threats.

1. Walker argues that the evidence was insufficient to support his aggravated assault conviction because his "conduct amounted to merely hitting the victim in her face with his fists," which is not sufficient to show intent to cause, and did not result in, serious bodily harm to the victim.

> Under OCGA § 16-5-21 (a) (2), a person commits the offense of aggravated assault when he or she assaults: with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . . Hands and fists may be deadly weapons depending upon the circumstances, including the extent of the victim's injuries.[6]

The indictment charged Walker with the aggravated assault of Kelly by assaulting her "with an object, to wit: his hands, which when used offensively against another person is likely to result in serious bodily injury, by striking . . . Kelly repeatedly about her head and face with his . . . hands." Thus, it was unnecessary for the indictment to allege that Walker used his hands as a deadly weapon.[7]

The evidence of the extent of the damage inflicted upon Kelly by Walker's repeated punches to her face and head was sufficient to authorize the jury's verdict, and thus, the trial court did not err in denying Walker's motion for directed verdict on this basis.[8]

2. Next, Walker argues that the trial court erred in denying his motion for a directed verdict as to the terroristic threats charge because the threat was made to one police officer, who then communicated the threat to Kelly, and because insufficient corroborating evidence was presented to support the jury's verdict on this charge.

> A person commits the crime of making a terroristic threat when he threatens to commit any crime of violence . . . with the purpose of terrorizing another. The crime

---

[6] (Punctuation and footnote omitted.) *Sims v. State*, 296 Ga. App. 461, 462 (1) (675 SE2d 241) (2009).

[7] See *Greene v. State*, 295 Ga. App. 803, 806-807 (2) (673 SE2d 292) (2009) (citing *Hooker v. State*, 278 Ga. App. 382, 383 (1) (629 SE2d 74) (2006), for the proposition that if an "indictment alleged that defendant's fists were objects likely to result in serious bodily injury, it was unnecessary to further allege that defendant used his fist as a deadly weapon") (punctuation omitted).

[8] See, e.g., *Sims*, 296 Ga. App. at 462 (1).

of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize. That the message was not directly communicated to the victim would not alone preclude a conviction where the threat is submitted in such a way as to support the inference that the speaker intended or expected it to be conveyed to the victim.[9]

While "no person shall be convicted of committing the offense of making terroristic threats on the uncorroborated testimony of the party to whom the threat is communicated[,]"[10] "[s]light circumstances may provide sufficient corroborating evidence. The quantum of corroboration need not in itself be sufficient evidence, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged."[11]

Walker's contention is without merit because the police officer's testimony regarding the threat against Kelly was sufficiently corroborated by the testimony of Kelly and her roommate that Walker had threatened Kelly repeatedly over the previous three days and by Walker's attack on Kelly three days earlier.[12] It is of no moment that the officer, rather than Kelly, heard the specific threat at issue because Kelly initially answered the phone before handing it to the officer, so it can be inferred that Walker intended the threat to be communicated to Kelly rather than the officer.[13] Accordingly, the trial court did not err in denying the motion for a directed verdict as to this count.

3. Finally, Walker argues that his trial counsel was ineffective because he admitted to the jury in his opening statement that Walker hit Kelly, thereby preventing Walker from arguing that another individual actually assaulted Kelly.

[T]o prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been

---

[9] (Footnotes and emphasis omitted.) *Armour v. State*, 265 Ga. App. 569, 571 (1) (594 SE2d 765) (2004).

[10] *Wilson v. State*, 291 Ga. App. 263, 264 (1) (661 SE2d 634) (2008); see also OCGA § 16-11-37 (a).

[11] (Citations, punctuation and footnotes omitted.) *Hall v. State*, 292 Ga. App. 544, 548 (2) (664 SE2d 882) (2008).

[12] See id.

[13] See, e.g., *Armour*, 265 Ga. App. at 571 (1).

different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.[14]

"Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result."[15]

Here, as [Walker]'s claim of ineffective assistance relates to strategic matters outside of the trial record, [i.e., counsel's theory of the case,] trial counsel's testimony is required to evaluate the claim. However, [Walker]'s trial counsel was not called to testify at the hearing on [the] motion for new trial, and without trial counsel's testimony, [his] actions are presumed strategic.[16]

Accordingly, we find no merit in Walker's ineffective assistance of counsel claim.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 9, 2009.

*William P. Nash, Jr.*, for appellant.
*J. Gray Conger, District Attorney, Michele C. Ivey, Assistant District Attorney*, for appellee.

---

[14] (Citation omitted.) *Shields v. State*, 285 Ga. 372, 376 (4) (677 SE2d 100) (2009).

[15] (Citation and footnote omitted.) *Hazelrigs v. State*, 255 Ga. App. 784, 786 (2) (567 SE2d 79) (2002). See *Greene*, 295 Ga. App. at 807-808 (4) (a) ("[g]iven that the requested charge permitted the jury to convict [defendant] of two misdemeanors, rather than two felonies, the decision to request it was neither unreasonable nor incompetent. To the contrary, [the decision] represents an example of trial counsel's effectiveness").

[16] (Citations and punctuation omitted.) *Heard v. State*, 291 Ga. App. 550, 556 (4) (a) (662 SE2d 310) (2008). See, e.g., *Pruitt v. State*, 282 Ga. 30, 34-35 (4) (d) (644 SE2d 837) (2007) (trial counsel's statements made to the jury supporting his theory of the case were made in furtherance of trial strategy and, therefore, was not deficient performance).