**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**March 7, 2013**

# In the Court of Appeals of Georgia

A12A2510. JOHNSON v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for aggravated assault, obstruction, and possession of a firearm by a convicted felon, Johnny Mack Johnson argues that the evidence was insufficient and that the trial court should have suppressed all references to the gun recovered from his home. Johnson also argues that the charge to the jury was erroneous in a number of respects and that counsel should have withdrawn from representation because his office had previously represented two victims in the case. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165)

(2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the record shows that on the night of October 21, 2007, Corey McKeller reported his brother's car stolen from a street where Johnson lived. The police told McKeller to wait for them at the location of the alleged theft. McKeller did so and was sitting in his car with his infant daughter in the back seat when Johnson arrived. Sarrain Cook, a friend of McKeller, was also out looking for McKeller's brother's car and arrived as a passenger in a car driven by Kevin Toomer, a friend of both Cook and McKeller. Cook got out of the car and asked Johnson, the ex-husband of Cook's grandmother, what had happened to McKeller's brother's car. Johnson responded, "Boy, I told you when I see you, I was going to get you." When Cook responded that he was not a boy, Johnson pulled out a handgun and fired three shots: the first at the car in which Cook had been a passenger, a second after climbing on top of the same car as Cook hid behind, and a third as Cook fled down the street. Cook ran

to a house with an open door, asked the occupants to call the police, and ran back to the car in which he had arrived, which picked him up and left the scene.

McKeller, who had remained in his own car, yelled out to Cook and Johnson that he had called the police. As McKeller drove away, Johnson shot at McKeller's car as well. When an arriving police officer told Johnson to place his hands behind his back, Johnson refused and had to be pepper-sprayed by a second officer. A shell casing of unspecified caliber was recovered from the street where the shootings took place.

Johnson was charged with aggravated assault each as to McKeller, his infant daughter, and Cook (counts 1, 2, and 3); obstruction (count 4); and possession of a firearm by a convicted felon (count 5). Johnson filed a motion to suppress evidence including a .25-caliber pearl-handled silver revolver found at his house after his arrest. At the outset of the hearing on the motion, the State conceded that the search of Johnson's home yielding the handgun was illegal. The trial court then suppressed "any evidence . . . seized at that time."

At the outset of trial, the court noted that although the State was free to elicit eyewitness descriptions of the gun Johnson used in the shooting at issue, the State could make "no reference to the source of the gun," and that "nothing can be

3

introduced into evidence that was seized" during the illegal search of Johnson's house. Johnson's counsel did not object to this ruling.

At trial, McKeller described the gun he saw Johnson use in the shooting as "a little silver" handgun with "pearl handles" on its sides. McKeller also described a prior incident in the spring of 2007 in which Johnson threatened McKeller, Cook, and Toomer with the same .25-caliber pearl-handled silver handgun and shot at Toomer's car twice while Cook was a passenger in it. Johnson's ex-wife also testified that she had seen a silver pearl-handled handgun in early 2007 when she was cleaning out Johnson's mother's home after her death and that Johnson had taken the handgun at that time.

The jury acquitted Johnson of the aggravated assault on the infant but found him guilty of the remaining charges. He was convicted and sentenced to 46 years to serve. His motion for new trial was denied.

1. In challenging the sufficiency of the evidence against him, Johnson attacks the credibility of McKeller, Cook, and Johnson's ex-wife on the basis of the prior difficulties between him and all of these witnesses. But such matters of credibility are for the jury, and not this Court, to decide. As such, the evidence outlined above was sufficient to sustain Johnson's conviction. See OCGA §§ 16-5-21 (defining

aggravated assault), 16-10-24 (a) (defining misdemeanor obstruction), 16-11-131 (b) (defining possession of a firearm by a convicted felon); *Jackson*, supra.

2. On appeal, Johnson argues for the first time that *all* references to the .25-caliber handgun, including those made by eyewitnesses as to his possession and use of the gun before and at the incident at issue, should have been suppressed as a result of the illegal search of his house conducted afterward. As Johnson himself concedes, however, there is no authority for such a sweeping prohibition. Further, we will not consider a motion to suppress raised for the first time on appeal, let alone one containing constitutional objections. *Hatcher v. State*, 224 Ga. App. 747, 748-749 (1) (482 SE2d 443) (1997) ("Failing to file a timely motion to suppress amounts to a waiver of even constitutional challenges").

3. Johnson argues that the trial court erred when it refused to charge the jury on (a) simple assault and (b) reckless conduct as lesser included offenses of aggravated assault, and that it also erred when (c) it charged the jury that the State need only prove that a deadly weapon was used in the assaults. Again, we disagree.

(a) Although Johnson suggests that a charge on the lesser included offense of simple assault was warranted simply because Johnson had been involved in prior disputes with Cook without injuring Cook, Johnson fails to raise a question of fact as

5

to whether he assaulted Cook without a gun in the course of the incident at issue. This Court has repeatedly held that where "'the undisputed evidence shows that [an] assault was committed with a deadly weapon, it is not error to refuse to charge on simple assault as a lesser included offense.'" (Emphasis omitted.) *Comley v. State*, 218 Ga. App. 520, 521 (2) (462 SE2d 432) (1995), quoting *Dickerson v. State*, 207 Ga. App. 241 (1) (427 SE2d 591) (1993); see also *Clark v. State*, 191 Ga. App. 386, 387 (3) (381 SE2d 763) (1989). Under these facts, Johnson "either committed an aggravated assault or none at all. There was no evidence of an attempt to commit an injury not involving a gun." (Citation and punctuation omitted.) *Dickerson*, supra at 241 (1). It follows that the trial court did not err when it refused to charge the jury on simple assault. Id.

(b) Johnson also argues that he was entitled to a charge on reckless conduct. We disagree.

OCGA § 16-5-60 (d) defines the misdemeanor of reckless conduct as causing bodily harm or endangering the bodily safety of another person "by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person" when "the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise."

6

As the State points out, Johnson was acquitted on aggravated assault on the infant, thus mooting any issue concerning reckless conduct as a lesser included offense of that crime. Further, Johnson did not testify, and he has pointed to no evidence suggesting that the gun discharged accidentally. As to the counts against the two adult victims, therefore, the evidence was thus susceptible to only two reasonable conclusions: that Johnson shot at the victims, or that he shot into the air in order to scare them. Neither of these acts was negligent. *Bright v. State*, 238 Ga. App. 876, 885 (11) (520 SE2d 48) (1999) (neither defendant's shooting at a victim nor his shooting at a window over victim's head was a negligent act). As a result, Johnson was "either guilty of aggravated assault or not under the evidence," id., and the trial court did not err when it refused an instruction on reckless conduct. Id. (affirming trial court's refusal to charge on reckless conduct).

(c) Jones also argues that there was a fatal variance between the trial court's charge that Jones used a "deadly weapon" in the assaults and the indictment's specification that he used a .25-caliber handgun.

It is true that "[i]f the indictment sets out the offense as done in a particular way, the proof must show it so, or there will be a variance[.]" *Jones v. State*, 312 Ga. App. 15, 18 (2) (b) (717 SE2d 526) (2011). It is equally true, however, that

7

[n]ot every variance in proof from that alleged in the indictment is fatal. The crucial requirements are (1) that the accused be definitely informed as to the charges against him, so that he is able to present his defense, and (2) that he may be protected against another prosecution for the same offense. Unless the variance subjects defendant to one of these dangers it is not fatal.

(Footnote omitted.) Id. A variance between an indictment naming a particular kind of firearm and proof establishing that a different firearm was actually used is not fatal to a criminal conviction. Id. (no fatal variance between an indictment alleging that defendant used a pellet gun and evidence showing that he used a BB gun); *Mathis v. State*, 299 Ga. App. 831, 833 (1) (a) (684 SE2d 6) (2009) (variance between evidence of a "pellet gun" and the indictment's "handgun" was not fatal).

This indictment, which was read to the jury, specified that Johnson committed the assaults with a .25-caliber handgun, and at least one witness in this case described the gun at issue as a .25-caliber. Accordingly, there was no actual variance, let alone a fatal one, between the allegations in the indictment and the evidence produced at trial. See *Jones*, supra. Further, Johnson was definitely informed as to the charges against him, and there is no evidence that he is at risk of another prosecution for the same offense.

4. Finally, Johnson argues that the public defender who eventually defended him at trial suffered from an actual conflict because another attorney in the same public defender's office had previously represented McKeller and Cook in other matters. We disagree.

As Johnson concedes, and because the "mere possibility of conflict is insufficient to impugn a criminal conviction," a defendant has the burden of showing an actual conflict, meaning that there is "'a substantial risk'" that counsel's representation of him was "'materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person.'" (Citation omitted.) *Lytle v. State*, 290 Ga. 177, 178 (2) (718 SE2d 296) (2011), quoting *Burns v. State*, 281 Ga. 338, 340 n. 3 (638 SE2d 299) (2006).[1]

Johnson points out that the public defender originally representing him had previously represented McKeller and Cook and had therefore agreed to the assignment of new counsel in order to avoid "a potential conflict" as to "what witnesses were

---

[1] Our Supreme Court is currently considering whether "the rules for imputing conflicts operate within a single circuit public defender's office in the same manner as those within a law firm." *State v. Abernathy*, 289 Ga. 603, 604 (1) (715 SE2d 48) (2011), citing *In re: Formal Advisory Opinion No. 10-1*, Case No. S10U1679 (docketed July 1, 2010). We need not reach this question because we find no evidence of any actual conflict or adverse effect arising from Johnson's representation by two members of the same public defender's office at different times. See id.

called" and "what information" might be used to impeach either Johnson or the victims. The record of the hearing on Johnson's motion for new trial shows, however, that the public defender who eventually represented Johnson at trial had never represented either Cook or McKeller, and that Johnson's first assigned public defender had represented the two men only in other matters. Johnson's trial counsel also testified that he had not shared any information that would have affected his ability to represent Johnson with any other members of the public defender's office.

This record is insufficient to show an actual conflict in that there is no "substantial risk" that trial counsel's representation of Johnson in this case was "materially and adversely affected" by the first public defender's representation of McKeller and Cook in other matters. *Lytle*, supra at 178 (2). It follows that the trial court did not err when it denied Johnson's motion for new trial on this ground.

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*