**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 1, 2013**

# In the Court of Appeals of Georgia

A13A0495. FERGUSON v. THE STATE.

PHIPPS, Chief Judge.

Jason Ferguson was convicted of aggravated assault. He appeals, contending that the evidence was insufficient to support the conviction and that the court committed errors in its charge to the jury. For the reasons that follow, we affirm.

1. Ferguson challenges the sufficiency of the evidence.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

So viewed, the evidence showed the following. Ferguson's fiancé, B. G., testified that she and Ferguson were at her residence on January 16, 2010 when Ferguson received a phone call. When the phone call concluded, B. G. asked Ferguson about the call and whether he was having an affair with the caller. Ferguson grabbed B. G. by her hair, threw her against a door, and choked her for several seconds. The two argued, then Ferguson went outside, with B. G. following, and placed some clothing in his vehicle. When B. G. attempted to talk to him, Ferguson grabbed her by the hair and hit her with his fist. B. G. crouched on the ground, and Ferguson hit her several more times, dragged her, and kicked her in the ribs. B. G. attempted to get up, and Ferguson hit, slapped, and kicked her. Ferguson went back inside the residence, leaving B. G. in the yard, bleeding. B. G. went into the garage, grabbed a knife and punctured the tires on Ferguson's vehicle; she testified that she wanted Ferguson to go to jail for what he had done to her, so she punctured the tires to prevent him from leaving before the police arrived (though she had not yet called

---

[1] *Johnson v. State*, 320 Ga. App. 161 (739 SE2d 469) (2013) (citations and punctuation omitted).

2

the police). Ferguson exited the residence, and B. G. entered it. Ferguson went back inside and struck B. G. repeatedly with his fists, hitting her so hard that her ears rang. She begged him to stop and told him he was going to kill her if he continued. He stopped hitting her and left the room, at which time she hid under the bed and called the police.

When the police officers arrived, Ferguson had blood on his pants, shirt, and hands, but he did not appear to have any injuries. B. G. was under a bed, was bleeding from both sides of her head, and had lacerations on her ear, scalp and hand, bruising on her face, and scratches on her arms and neck; she complained that her head "hurt bad" and her neck "was killing" her. She was transported to a hospital, where she was treated for lacerations (requiring stitches), and rib fractures.

Ferguson testified at trial, claiming that when B. G. asked him about the phone call, he told her he was leaving, retrieved some of his clothing, and headed outside to his vehicle; neither person had touched the other. B. G. had gone outside, and was sitting on the ground, holding her head. Ferguson saw that her head was bleeding, and when he tried to render aid, she called him names, hit him, grabbed a knife off the ground, and lunged at him as though she were going to stab him. He grabbed her wrist and arm, pushed her against the vehicle, and slammed her hand against the

vehicle so that she would drop the knife, which she did. He denied having hit her with his fists, and testified that, other than possibly causing the injuries to her hand and arm, he did not know what had caused her injuries.

OCGA § 16-5-21 (a) (2) pertinently provides that a person commits the offense of aggravated assault when he assaults a person "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

Ferguson contends that the evidence was insufficient to support his conviction because aggravated assault requires the use of a deadly weapon, and the evidence introduced at trial showed that he struck B. G. with his hands. He asserts that "[f]ists are not normally considered deadly weapons per se," and that the state failed to prove that his hands were used as deadly weapons or were used in a manner likely to cause serious harm to B. G.

However, "subsection [(a) (2) of OCGA § 16-5-21] is a disjunctive clause that provides alternative bases for conviction. Since the indictment charged that [Ferguson's] fists were likely to result in serious bodily injury, no reference to, or

4

evidence of, a deadly weapon was required at trial."[2] Further, "[w]hether [Ferguson]'s hands and fists were objects used in a manner likely to result in serious injury was a question of fact for the jury to determine."[3] "The evidence that [Ferguson] beat [B. G.] about the head and face with his hands is sufficient to authorize the jury's verdict that he is guilty, beyond a reasonable doubt, of aggravated assault."[4]

2. Ferguson contends that the court erred in several respects in its charge to the jury. But after the trial court charged the jury, when it asked if the defense had any exceptions to the jury charge, counsel replied "[n]ot at this time," after which the jury retired to deliberate.

OCGA § 17-8-58 (a) states that

> any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Thus, under this Code section, unless a party specifically objects at the

---

[2] *Anthony v. State*, 275 Ga. App. 274, 276 (2) (620 SE2d 491) (2005) (footnotes omitted); see also *Greene v. State*, 295 Ga. App. 803, 806-807 (2) (673 SE2d 292) (2009).

[3] *Sims v. State*, 296 Ga. App. 461, 462 (1) (675 SE2d 241) (2009) (punctuation and footnotes omitted).

[4] Id.; see *Walker v. State*, 298 Ga. App. 265, 267 (1) (679 SE2d 814) (2009).

conclusion of the jury charge, he has waived his right to urge error on appeal.[5]

Because trial counsel did not object to the jury instructions at trial, appellate review of the contentions is precluded unless the contested portion[s] of the jury charge constitute[ ] plain error which affect[ ] substantial rights of the parties. We review for plain error an alleged jury-instruction error if the error is properly enumerated and argued on appeal. Reversal of a conviction is authorized if all four prongs of the standard adopted in [*State v.*] *Kelly*[6] are met: the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings. On "plain error" review, the presence of actual legal error is not enough, as the jury instruction in question must have an obvious defect rather than a merely arguable defect.[7]

(a) Ferguson contends that the court erred by failing to give the jury his requested charge, namely, that: fists are not deadly weapons per se as contemplated

---

[5] *Cawthon v. State*, 289 Ga. 507, 509-510 (3) (713 SE2d 388) (2011) (citations and punctuation omitted).

[6] 290 Ga. 29 (718 SE2d 232) (2011).

[7] *Terry v. State*, 291 Ga. 508, 509 (2) (731 SE2d 669) (2012) (citations and punctuation omitted).

by the aggravated assault statute.[8] However, the indictment did not allege that Ferguson's fists were deadly weapons. And the jury charge given required the state to prove that Ferguson committed aggravated assault in the manner set forth in the indictment. As such, a jury charge concerning whether fists are deadly weapons per se would not have been adjusted to the facts and circumstances of the case, and the trial court committed no error in failing to give such a charge.[9] Thus, Ferguson's contention "cannot make it past the first prong of the plain error review."[10]

(b) Ferguson contends that the court failed to give a proper jury charge on the issue of justified use of force to defend against another's use of unlawful force. He asserts that "[a] proper charge would have allowed the Jury to consider [Ferguson's] actions in reference to the threat he felt was offered by [B. G.] when she had the knife."

The court pertinently instructed the jury:

---

[8] See *Brown v. State*, 232 Ga. App. 787, 788 (1) (504 SE2d 452) (1998) ("fists and hands are not deadly weapons per se within the meaning of OCGA § 16-5-21 (a) (2)").

[9] See *Stevens v. State*, 293 Ga. App. 845, 848 (3) (668 SE2d 467) (2008).

[10] *Hoffler v. State*, 292 Ga. 537, 542 (4) (739 SE2d 362) (2013) (no reversal where there was no legal error, obvious or otherwise, in jury instruction and appellant was unable to satisfy the first prong of the "plain error" analysis).

A person is justified in threatening or using force against another person when and to the extent that he reasonable - - he reasonably believes that such threat or force is necessary to defend himself against the other's imminent use of unlawful force. A person is justified in using force that is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to himself or to prevent the commission of a forcible felony.

The charge given was a correct statement of the law[11] and, contrary to Ferguson's claim, it instructed the jury that it was allowed to consider Ferguson's actions in reference to the threat allegedly presented by B. G. Thus, "it cannot be seriously contended that the trial court committed 'clear or obvious' error that is necessary for 'plain error.'"[12]

(c) Ferguson argues that the court erred by failing to instruct the jury that the state has the burden of proving that the defendant was not justified in using force. However, the court in fact instructed the jury: "An 'affirmative defense' is a defense that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it. Once an affirmative defense is raised, the burden is on the State to disprove it beyond

---

[11] See OCGA § 16-3-21 (a).

[12] *Terry*, supra at 510 (2) (a); see generally *Hoffler*, supra.

8

a reasonable doubt." The court then explained justification, and further instructed the jury: "The State has the burden of proving beyond a reasonable doubt that the defendant was not justified." These were correct statements of the law.[13] The court made no error in its jury charge, and Ferguson's claim cannot make it past the first prong of the plain error review.[14]

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[13] See generally *Milinavicius v. State*, 290 Ga. 374, 377 (4) (721 SE2d 843) (2012) (appellant's allegation that trial court gave erroneous jury charge on justified use of force was without merit where the charge as a whole was not an incorrect statement of the law and fairly represented the issue of justification); *Arsenault v. State*, 257 Ga. App. 456, 457 (2) (571 SE2d 456) (2002) (where defendant raised an affirmative defense of justification and testified to the same, the state bore the burden of disproving the defense beyond a reasonable doubt).

[14] See *Hoffler*, supra.