**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 22, 2023**

# In the Court of Appeals of Georgia

A23A1751. DAVIS v. THE STATE.

FULLER, Senior Judge.

A jury found Edward Eugene Davis guilty of rape, aggravated assault, and false imprisonment. Following the denial of his motion for new trial, Davis appeals, arguing that his convictions for rape and aggravated assault were repugnant in light of his acquittal on other charges. He also challenges the sufficiency of the evidence supporting his false imprisonment conviction, and he contends the trial court erred in its jury instruction on that crime. Finally, he contends that the State's closing argument was improper. For reasons that follow, we affirm.

Viewed favorably to the verdict,[1] the evidence shows that, on August 24, 2020, the victim – who was homeless – was walking toward the Homeless Authority, pulling her suitcases, when Davis approached her and offered to help. The two proceeded to the Homeless Authority, but it was too late in the day to find the victim housing, and she was asked to return the next day. Davis then told the victim she could stay with him and his girlfriend.

The victim walked with Davis to his tent at an encampment. Although no girlfriend was present, the victim entered the tent with Davis. Once inside, Davis began drinking. The two began a cordial conversation, but "things [took] a turn[.]" Davis held a knife to the victim's throat and warned her not to make a sound. Davis then pushed the victim backwards and choked her with one hand while removing her clothes with his other hand. Davis choked and raped the victim multiple times. He also placed his mouth on the victim's vagina. At one point between assaults, Davis left the tent to buy more beer; but the victim was afraid to leave because she did not know how long Davis would be gone. Later, Davis approached the victim from behind as if to penetrate her anally, and the victim cried and begged him to stop. The victim then

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

asked to go to the bathroom, grabbed her purse, and fled, leaving behind her suitcases, which contained all of her belongings.

The next morning, the victim returned to the Homeless Authority, and she told one of the workers about the assault. Police were called and upon arrival discovered the victim, who was shaking and crying. The victim told the police where to find the encampment and described both Davis and his tent. Police traveled to the campsite and found the victim's suitcases. Davis was still inside the tent in a state of undress.

The victim was taken to a rape crisis center where she underwent a forensic examination. The nurse who examined the victim noted "redness and bruising" on her neck, arms, hands, back, legs, and abdomen. A pelvic exam showed bruising and an ulceration on the victim's genitalia.

Davis was arrested and charged with three counts of rape, one count of aggravated sodomy for placing his mouth on the victim's vagina, two counts of aggravated assault by placing his hands around the victim's neck and applying pressure, one count of aggravated assault for brandishing a knife, and one count of false imprisonment. At trial, Davis took the stand and denied raping, assaulting, or imprisoning the victim; according to Davis, the two had consensual sexual relations.

3

Based on the evidence, the jury found Davis guilty of one count of rape, one count of aggravated assault by choking, and false imprisonment. The jury acquitted him of the remaining charges.

1. On appeal, Davis contends that his convictions for rape and aggravated assault are "repugnant verdicts" in light of his acquittals on the additional counts of those same offenses. Although Davis was charged with multiple separate counts of those offenses, the indictment used identical language for each rape charge and identical language for each aggravated assault charge. According to Davis, the fact the jury acquitted him of the exact same charge precludes a finding of guilt on any charge. We disagree.

The crux of Davis's argument appears to be that the verdicts are inherently contradictory. As the Supreme Court acknowledged in *McElrath v. State*, there are three main categories of contradictory verdicts: (1) inconsistent verdicts, (2) mutually exclusive verdicts, and (3) repugnant verdicts. *McElrath v. State*, 308 Ga. 104, 108 (2) (839 SE2d 573) (2020). At issue here is whether Davis's convictions were repugnant.[2]

---

[2] The verdict is not mutually exclusive, which occurs in situations where a defendant is found guilty of two offenses that cannot legally exist simultaneously. *McElrath*, 308 Ga. at 110 (2) (b).

A truly repugnant verdict is rare. *State v. Owens*, 312 Ga. 212, 217 (1) (b) (862 SE2d 125) (2021). Repugnant verdicts "occur when, in order to find the defendant not guilty on one count and guilty on another, the jury must make affirmative findings shown on the record that cannot logically or legally exist at the same time." *McElrath*, 308 Ga. at 111 (2) (c) (emphasis omitted). For example, in *McElrath*, the defendant stabbed his mother to death, and he was charged with both malice murder and felony murder. The jury found the defendant legally insane with respect to malice murder and acquitted him of that offense, but determined that he was guilty but mentally ill with respect to felony murder. Because it was impossible to have different mental states at the same time, the Supreme Court found the verdicts repugnant. Id. at 111-112 (2) (c).

Much like a repugnant verdict, an inconsistent verdict involves an alleged inconsistency between guilty and not guilty verdicts against a defendant or defendants that cannot be logically reconciled. However, because the inconsistent verdict rule has been abolished, a defendant cannot attack as inconsistent a jury verdict of guilty on one count and not guilty on a different count as a legitimate means of having his or her conviction reversed. This is the case because it is not generally within the court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not

guilty verdicts. Appellate courts cannot know and should not speculate why a jury acquitted on one offense and convicted on another offense. The reason could be an error by the jury in its consideration or it could be mistake, compromise, or lenity. Stated another way, it is imprudent and unworkable to allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that the courts generally will not undertake.

*Carter v. State*, 298 Ga. 867, 868-869 (785 SE2d 274) (2016) (citations and punctuation omitted).

To distinguish between a repugnant versus merely inconsistent verdict, we ascertain whether the jury's verdict plainly and palpably demonstrates the jury's reasoning in reaching an illogical conclusion. If any speculation at all is required, the verdict is merely inconsistent rather than repugnant. See *Carter*, supra. And a verdict will not be found repugnant simply "because it involves a finding of guilt and an acquittal on the same offense based on the same set of facts[.]" *Smith v. State*, 348 Ga. App. 643, 646 (1) (824 SE2d 382) (2019).

Contrary to Davis's contention on appeal, the verdicts against him – although arguably inconsistent – were not repugnant. The verdict here does not plainly demonstrate the jury's reasoning in finding Davis guilty of one count of rape and aggravated assault while acquitting him of the remaining charges of rape and aggravated assault. Perhaps the jury felt that compromise was in order, or perhaps the jury misapprehended the law. Where, as here, we are left to speculate regarding the jury's rationale, the verdict will be deemed inconsistent rather than repugnant. See *Wright v. State*, 365 Ga. App. 415, 423 (1) (878 SE2d 751) (2022). Accordingly, this argument presents no basis for reversal. See id.

2. Davis also challenges the sufficiency of the evidence supporting his conviction for false imprisonment. According to Davis, there was no evidence that he physically restrained the victim; rather, "any physical actions restraining the victim were acts constituting the elements of the offenses of rape and aggravated assault."

> When we consider the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and inquire only whether any rational trier of fact might find beyond a reasonable doubt that the defendant is guilty of the crimes of which he was convicted. Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence,

leaving the resolution of such things to the discretion of the trier of fact. Accordingly, the jury's verdict will be upheld as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

*Wilkey v. State*, 368 Ga. App. 238, 240 (1) (889 SE2d 427) (2023) (footnotes and punctuation omitted).

"A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). "As the statute does not require that the imprisonment be for a specific length of time, a brief detention can constitute false imprisonment." *Stewart v. State*, 267 Ga. App. 100, 102 (2) (598 SE2d 837) (2004). Here, the victim testified that Davis pulled a knife on her and threatened to kill her, and that she was afraid to leave the tent. Under these facts, the jury was authorized to find Davis guilty of false imprisonment. See *Ellis v. State*, 316 Ga. App. 352, 357 (1) (d) (729 SE2d 492) (2012).

In a related sub-argument, Davis asserts that "[t]he State 'used up' the evidence establishing false imprisonment in proving the other charges[.]" This appears to be a merger argument. See *Townsend v. State*, 357 Ga. App. 111, 114 (1) (a)

(848 SE2d 210) (2020) ("[T]wo offenses will merge as a matter of fact if one of them is established by proof of the same or less than all the facts required to prove the other. The key question is whether the State 'used up' its evidence in proving the crime.") (citation and punctuation omitted). Because the offenses of rape and aggravated assault have different elements than the crime of false imprisonment, the offenses did not merge. See *Turner v. State*, 253 Ga. App. 760, 763 (5) (560 SE2d 539) (2002) (holding that false imprisonment did not merge with child molestation charge).

3. Davis asserts that the trial court failed to properly charge the jury on the offense of false imprisonment. The trial court instructed jurors that "[a] person commits the offense of False Imprisonment when, in violation of the . . . personal liberty of another, he confines or detains such person without legal authority." In the indictment, however, Davis was charged with false imprisonment for confining the victim. According to Davis, based on the trial court's instruction, the jury could have convicted Davis for detaining rather than confining the victim.

Because Davis did not object to the jury instructions at trial, we consider only whether the court's jury instruction constituted plain error. *Hughes v. State*, 310 Ga.

453, 456 (2) (a) (851 SE2d 580) (2020). Under this stringent standard, reversal is authorized only if:

> [T]he error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings. On "plain error" review, the presence of actual legal error is not enough, as the jury instruction in question must have an obvious defect rather than a merely arguable defect.

*Terry v. State*, 291 Ga. 508, 509 (2) (731 SE2d 669) (2012).

There is no plain error here. As a threshold matter, we question whether there is a meaningful distinction between the words "confine" and "detain." See, e. g., *State v. Coleman*, 306 Ga. 529, 531 (832 SE2d 389) (2019) (noting that dictionaries use the words "confine" or confinement" to define "detain"). In any event, the trial court's instruction was a correct statement of the law and thus did not constitute plain error. See *Ferguson v. State*, 322 Ga. App. 565, 568 (2) (b) (745 SE2d 784) (2013) (no plain error where charge given was a correct statement of the law).

4. Finally, Davis contends that the trial court erred in permitting the prosecutor to argue about Davis's propensity for violence in closing argument. When Davis took the stand, the State tendered a copy of his prior conviction for aggravated assault for

10

impeachment purposes. The trial court instructed jurors that the evidence was being offered for the limited purpose of attacking Davis's credibility. Nevertheless, during closing argument, the prosecutor said:

> [R]emember that [Davis] was sentenced in February of 2020 for the offense of Aggravated Assault. And in August of 2020, six months later, [the victim] accuses him of Aggravated Assault. So it's not hard to believe he did it again.

Davis asserts that this argument was improper, and we agree. Because Davis's prior aggravated assault conviction was offered for impeachment purposes, it could not be used to establish his propensity to commit crimes. See *Parker v. State*, 339 Ga. App. 285, 293 (3) (793 SE2d 173) (2016). The State thus erred in arguing that the prior aggravated assault showed Davis had a propensity to commit the offenses for which he was on trial. See id.

For the error to be reversible, however, Davis must show harm as well as error. See *Wright v. State*, 319 Ga. App. 723, 731 (3) (a) (738 SE2d 310) (2013). We find no harm here. Davis does not challenge the admission of his prior conviction for impeachment purposes. Accordingly, the jury was already aware of the conviction, and the trial court instructed the jury regarding the limited use of the conviction.

Although the prosecutor strayed beyond that limited use in closing argument, the improper comment was fleeting. Under these circumstances, we find it highly probable that the improper argument did not contribute to the verdict. See *Arrington v. State*, 286 Ga. 335, 345-346 (16 ) (a) (687 SE2d 438) (2009).

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur.*