304 Ga. 259
FINAL COPY

S18A0703.  THE STATE v. HERRERA-BUSTAMANTE.

NAHMIAS, Justice.

Moises Herrera-Bustamante was convicted after a jury found him guilty of driving under the influence of alcohol and having an open container of alcohol.  About a year later, while his motion for new trial was pending, this Court decided Olevik v. State, 302 Ga. 228 (806 SE2d 505) (2017), which held that under the compelled self-incrimination clause of the Georgia Constitution, individuals have the right to refuse to take a breathalyzer test.  Herrera-Bustamante then amended his motion for new trial to argue for the first time that evidence that he refused to consent to a breathalyzer test should not have been admitted against him at his DUI trial.  The trial court agreed and granted him a new trial on this ground.  Because Herrera-Bustamante never raised this claim at trial and has not shown that the admission of the breathalyzer refusal evidence was plain error, however, we reverse the order granting him a new trial and remand the case for the trial court to consider the other grounds raised in the

amended motion for new trial.

1.     On December 15 and 16, 2016, Herrera-Bustamante was tried before a jury in state court on charges of driving under the influence (less safe), driving with a suspended license, possessing an open alcoholic beverage container, and failure to maintain lane.  The State's only witness, Gwinnett County Police Officer Austin York, testified that at about 1:00 a.m. on the night of October 15, 2015, he saw a car cross the right-side lane line and almost run off the road before gently swerving back into the travel lane.  Officer York initiated a traffic stop, and the car, which Herrera-Bustamante was driving with a passenger in the front seat, pulled over.  As the officer approached the car, he smelled an odor of marijuana and alcohol.  Officer York asked Herrera-Bustamante for his driver's license, but he said he could not find it and gave the officer a work identification card instead; a computer check indicated that his license had been suspended. Officer York asked Herrera-Bustamante to get out of the car, which he had difficulty doing and appeared unsteady on his feet.  The officer smelled alcohol on Herrera-Bustamante's breath and asked how much he had to drink that night. He first said that he had not had any alcohol, but when the officer asked about the odor, he admitted to drinking one beer two or three hours earlier.  Herrera-

2

Bustamante agreed to perform field sobriety tests; Officer York had him perform three tests and observed a total of 10 out of a possible 18 clues, which indicated impairment.

At that point, Officer York arrested Herrera-Bustamante for DUI and put him in the back of the patrol car. The officer then read Herrera-Bustamante the statutory implied consent notice for drivers age 21 and older found in OCGA § 40-5-67.1 (b) (2) and asked if he would consent to a breathalyzer test. Herrera-Bustamante sat silently for 10 or 15 seconds, which the officer interpreted as a refusal to take the breath test. Officer York then searched Herrera-Bustamante's car and found a partially empty bottle of whiskey directly behind the passenger seat in easy access of the driver.

Herrera-Bustamante also testified at the trial, claiming that he did not cross the side lane line, that he had consumed only one beer two or three hours before he was stopped, that he did not immediately tell the officer about this beer because he did not think a drink consumed so much earlier "counted," and that he had trouble getting out of the car because he had back issues. He added that he had paid the fine to have his driver's license restored and that the whiskey bottle had been left in his car the day before by a friend.

3

In the State's opening statement and closing argument, the prosecutor pointed out that Herrera-Bustamante had refused to take the breath test. In closing, the prosecutor argued that if Herrera-Bustamante truly had consumed only one beer hours earlier, the test would have shown a blood alcohol level of almost nothing, and urged the jurors to consider his refusal to take the test in their deliberations. The trial court instructed the jury that a defendant has a right to refuse to take a breath test, but if he does refuse, the jury may infer that the test would have shown the presence of alcohol, although such an inference is not required and can be rebutted. Herrera-Bustamante did not object to the admission of the breathalyzer refusal evidence, to the arguments about that evidence, or to the jury instructions on how to consider that evidence.

The jury found Herrera-Bustamante guilty of DUI less safe and the open container violation but acquitted him of driving with a suspended license and failure to maintain lane. The court sentenced him to serve one year on probation, pay a fine of $300, and perform 80 hours of community service.

On December 30, 2016, Herrera-Bustamante filed a motion for new trial summarily raising the general grounds and claims that the evidence was insufficient to support his convictions and that the trial court improperly

4

admitted unspecified evidence. On October 16, 2017, this Court issued its opinion in Olevik, which analyzed DUI breathalyzer tests under Article I, Section I, Paragraph XVI of the Georgia Constitution of 1983, which guarantees that "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating." Olevik held that "Paragraph XVI protects against compelled breath tests and affords individuals a constitutional right to refuse [such] testing," and that reading a suspect the statutory implied consent notice does not, without more, compel a breath test. Id. at 252. Ten days later, with new counsel, Herrera-Bustamante filed an amended motion for new trial in which he claimed that his refusal to perform a breath test was unconstitutionally admitted as evidence against him, that the record is unclear as to whether he was present for all critical moments of his trial, and that Officer York's testimony about the suspended license was inadmissible hearsay.

On October 30, 2017, the trial court heard oral arguments on the motion. In addition to the merits, the State argued that Herrera-Bustamante had not properly preserved any constitutional challenge based on Olevik. Herrera-Bustamante's counsel did not address that issue, nor did the trial court. Instead, the court announced at the end of the hearing that it was granting the motion for

5

new trial "based on its interpretation of the holdings in <u>Olevik</u>," and the next day the court signed a summary order granting the motion.[1] The State then filed this appeal.

2. Two Georgia statutes expressly direct that evidence of a defendant's refusal to take a breath test is admissible at trial under circumstances like the ones in this case. OCGA § 40-6-392 (d) says: "In any criminal trial, the refusal of the defendant to permit a chemical analysis to be made of his blood, breath, urine, or other bodily substance at the time of his arrest shall be admissible in evidence against him." And the final paragraph of OCGA § 40-5-67.1 (b), which sets forth the implied consent notices to be read to various classes of drivers, says: "If any such notice is used by a law enforcement officer to advise a person of his or her rights regarding the administration of chemical testing, . . . the results of any chemical test, or the refusal to submit to a test, shall be admitted into evidence against such person."

Notwithstanding these statutes, in his brief to this Court as in his amended motion for new trial, Herrera-Bustamante contends that the trial court erred in

---

[1] There is no indication that the trial court has ruled on Herrera-Bustamante's other asserted grounds for a new trial.

6

allowing Officer York to testify that he refused to take a breathalyzer test, because the admission of such refusal evidence violates Paragraph XVI. For the first time here, but as a natural extension of his core contention, he also argues that OCGA §§ 40-6-392 (d) and 40-5-67.1 (b) are unconstitutional. Herrera-Bustamante bases these arguments on Olevik, which reaffirmed this Court's precedents holding that Paragraph XVI — like its predecessor provisions in all of Georgia's Constitutions since 1877, but unlike the Fifth Amendment to the United States Constitution — protects individuals against being compelled to generate evidence against themselves through *acts* as well as *statements*. See Olevik, 302 Ga. at 235-241. Olevik then held that providing the deep lung breath needed for a breathalyzer test is such an evidence-generating act, and expressly overruled DUI cases like Klink v. State, 272 Ga. 605 (533 SE2d 92) (2000), "to the extent they hold that Paragraph XVI of the Georgia Constitution does not protect against compelled breath tests or that the right to refuse to submit to such testing is not a constitutional right." Olevik, 302 Ga. at 241-246 & n.11.

Extrapolating from Olevik's holding that he had a state constitutional right to refuse to take a breathalyzer test, Herrera-Bustamante argues that evidence

7

that he exercised that right and refused testing could not be lawfully admitted against him, just as a defendant's invocation of his right against self-incrimination under the Fifth Amendment cannot be admitted against him as a matter of federal constitutional law. See Miranda v. Arizona, 384 U.S. 436, 468 n.37 (86 SCt 1602, 16 LE2d 694) (1966) ("In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."); Howard v. State, 237 Ga. 471, 474 (228 SE2d 860) (1976) (holding based on Miranda and Griffin v. California, 380 U. S. 609, 614 (85 SCt 1229, 14 LE2d 106) (1965), that "it is reversible error to instruct the jury in a criminal case . . . that silence . . . by a person in police custody may amount to an admission (of guilt)"). This is an important issue, and we have granted review in other pending cases to address it. See, e.g., Elliott v. State, S18A1204; Garvin v. State, S18A1112. But we cannot properly decide the issue in this case.

(a)    To begin with, Herrera-Bustamante is not entitled to ordinary appellate review of his claims that the breathalyzer refusal evidence was

inadmissible or that the statutes directing its admissibility are unconstitutional, because he did not properly preserve those claims for review. Herrera-Bustamante asserts that he is entitled to benefit from the holding in Olevik even though that decision was issued after his trial. It is true that under the so-called "pipeline" rule, Georgia appellate courts will apply "a new rule of criminal procedure . . . to all cases then on direct review or not yet final." Taylor v. State, 262 Ga. 584, 586 (422 SE2d 430) (1992).

Even assuming that Olevik announced such a new rule, however, as we also explained in Taylor, we will apply a new procedural rule only if the issue to which it pertains was properly preserved for appellate review. See id. ("Application of the new rule to a pending case will, of course, depend on the preservation of the issue for appellate review.") In other words, the pipeline rule does not alter the general rule that objections to the admission of evidence must be raised in a timely fashion at trial for the objection to be preserved for ordinary appellate review. See OCGA § 24-1-103 (a) (discussing how and when objections to evidentiary rulings are properly made to preserve claims of error); McClure v. Kemp, 285 Ga. 801, 802 (684 SE2d 255) (2009) (collecting cases applying or not applying the pipeline rule based on the appellant's preservation

9

of the issue).

We also have repeatedly held that challenges to the constitutionality of a statute must be made at the first available opportunity and cannot be withheld until a motion for new trial, much less an appeal. See, e.g., Lewis v. State, 279 Ga. 69, 70 (608 SE2d 602) (2005); Hardeman v. State, 272 Ga. 361, 361 (529 SE2d 368) (2000). See also Corbin v. State, 212 Ga. 231, 233 (91 SE2d 764) (1956) (applying this principle in the context of a challenge to a trial procedure statute).[2]

As mentioned earlier, Herrera-Bustamante did nothing before or during his trial to preserve his claims regarding the admission of the breathalyzer refusal evidence or the constitutionality of the statutes providing for its admissibility. This precludes ordinary appellate review of either claim.

(b)    The unavailability of ordinary review does not end our analysis of Herrera-Bustamante's evidentiary claim, however. "Although [he] did not object to [the breathalyzer refusal] evidence at trial, under Georgia's new

---

[2]  Herrera-Bustamante suggests that his first opportunity to challenge the constitutionality of the statutes arose after Olevik because he could not bring his challenges before Olevik made clear that compelled breathalyzer tests violate Paragraph XVI. However, the Constitution that Herrera-Bustamante claims was violated is in all relevant respects the same today as it was when he was tried and convicted, and nothing prevented him from raising his constitutional challenge at that time.

10

Evidence Code, the rulings related to this evidence are subject to review on appeal for 'plain error( ) affecting substantial rights.'" Gates v. State, 298 Ga. 324, 326 (781 SE2d 772) (2016) (quoting OCGA § 24-1-103 (d), which says in full: "Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court."). See also Simmons v. State, 299 Ga. 370, 374 (788 SE2d 494) (2016) (reviewing for plain error a claim that testimony violated the appellant's federal constitutional right against self-incrimination). This plain-error review is limited to the trial court's evidentiary rulings, that is, "ruling[s] which admit[ ] or exclude[ ] evidence," OCGA § 24-4-103 (a). See Gates, 298 Ga. at 328-329. Thus, the facial challenge to the constitutionality of OCGA §§ 40-6-392 (d) and 40-5-67.1 (b) that Herrera-Bustamante raises for the first time on appeal is beyond its scope.

> To show plain error, [Herrera-Bustamante] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have "seriously affect[ed] the fairness, integrity or public reputation of judicial

11

proceedings."

Lupoe v. State, 300 Ga. 233, 243 (794 SE2d 67) (2016) (citation and punctuation omitted). We need not analyze all of the elements of this test when, as in this case, the defendant has failed to establish one of them. See Stripling v. State, 304 Ga. 131 (816 SE2d 663) (2018).

Herrera-Bustamante has not shown that the trial court's admission of the breathalyzer refusal evidence was clear error. "'[A]n error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point . . . .'" Simmons, 299 Ga. at 374 (citation omitted). The "current law" considered is the law at the time of appellate review rather than at trial, see Lyman v. State, 301 Ga. 312, 317-318 (800 SE2d 333) (2017), but "[a]n error is not plain under 'current law' 'if a defendant's theory requires the extension of precedent.'" United States v. Trejo, 610 F3d 308, 319 (5th Cir. 2010) (citation omitted).

Herrera-Bustamante's claim that it is obvious that the admission of evidence of his refusal to take a breath test was unconstitutional hinges on whether evidence that a defendant exercised his right to refuse to take a breath test (a right protected only by the Georgia Constitution) must be treated the

12

same as evidence that a defendant exercised his right to refuse to answer questions (a right protected by both the Georgia and United States Constitutions). Herrera-Bustamante argues that both types of refusal evidence must be treated the same way because Olevik said that Paragraph XVI of our State Constitution encompasses the right both not to speak and not to act to generate evidence at the compulsion of the State. And, the argument continues, because existing precedent holds that a defendant's invocation of his right to silence cannot be used as evidence against him, see Miranda, 384 U. S. at 468 n.37; Howard, 237 Ga. at 474, invocation of the right not to take a breath test cannot be admitted either.

The problem for Herrera-Bustamante is that endorsement of his argument would require us to *extend* Olevik. Olevik held that a breathalyzer test involves an act that cannot be compelled under the Georgia Constitution, so the defendant has the right to refuse to take the test; Olevik did not decide anything about how such a refusal can or should be treated as evidence at trial. Indeed, our decision there could not hold anything about the proper treatment of refusal evidence, because Mr. Olevik *took* the breathalyzer test rather than refusing to take it. See Olevik, 302 Ga. at 231.

13

Herrera-Bustamante cites cases from this Court that did not allow the use in a criminal case of evidence that a defendant previously invoked his right against self-incrimination protected by the Georgia Constitution in the context of a formal proceeding. See Loewenherz v. Merchants' and Mechanics' Bank of Columbus, 144 Ga. 556, 559 (87 SE 778) (1916) (grand jury testimony); Harrison v. Powers, 76 Ga. 218, 245 (1886) (deposition testimony). However, a later case from this Court rejected a challenge under the federal and state Constitutions to the admission of evidence that the defendant remained silent when he was being questioned by law enforcement while in custody and his co-defendant said something that he would normally be expected to deny. See Emmett v. State, 195 Ga. 517, 535-537 (25 SE2d 9) (1943). See also Bennett v. State, 231 Ga. 458, 462 (202 SE2d 99) (1973) (rejecting a similar argument based on the federal constitutional right to remain silent).

Emmett, Bennett, and similar cases were overruled by Howard, which held that "it is reversible error to instruct the jury in a criminal case . . . that silence or acquiescence by a person in police custody may amount to an admission (of guilt)," but Howard's holding was based explicitly on Miranda and other federal constitutional case law, see 237 Ga. at 475. Olevik expressly declined to

14

address whether even the core holding of <u>Miranda</u> should be extended to the rights protected by Paragraph XVI as a matter of Georgia constitutional law. See <u>Olevik</u>, 302 Ga. at 250 & n.13 (declining to address whether "we should impose a <u>Miranda</u>-style prophylactic rule [requiring the police to advise suspects in custody that their breathalyzer test results may be used against them at trial] to protect suspects' Paragraph XVI rights"). Moreover, as Herrera-Bustamante acknowledges, there is existing Georgia law that cuts squarely against his claim of inadmissibility of evidence that he refused to take a DUI chemical test — Court of Appeals cases like <u>Wessels v. State</u>, 169 Ga. App. 246, 246-247 (312 SE2d 361) (1983), along with OCGA §§ 40-6-392 (d) and 40-5-67.1 (b), statutes that have been applied in many cases for many years and whose constitutionality cannot be properly questioned in this case, as discussed above.

For these reasons, whatever questions <u>Olevik</u> may raise regarding the admission of evidence of a defendant's refusal to take a breathalyzer test, a holding that such evidence is inadmissible would require the extension of precedent — indeed, its extension to strike down two statutory provisions — and that is fatal to Herrera-Bustamante's claim under plain-error review. See <u>Simmons</u>, 299 Ga. at 374-375; <u>Trejo</u>, 610 F3d at 319. See also <u>Wilson v. State</u>,

15

291 Ga. 458, 460 (729 SE2d 364) (2012) (applying this principle in plain-error review of a jury instruction issue under OCGA § 17-8-58 (b)).  Accordingly, the trial court erred in granting Herrera-Bustamante a new trial on the ground that evidence that he refused to take a breathalyzer test was improperly admitted.  Because the trial court did not rule on Herrera-Bustamante's other asserted grounds for a new trial, we remand the case for those issues to be considered.

Judgment reversed and case remanded.  Hines, C. J., Melton, P. J., Benham, Hunstein, Blackwell, Boggs, and Peterson, JJ., concur.

Decided August 20, 2018.

DUI breathalyzer tests; constitutional question. Gwinnett State Court. Before Judge Brantley.

Rosanna M. Szabo, Solicitor-General, Joëlle M. Nazaire, Samuel R. d'Entremont, Assistant Solicitors-General, for appellant.

Ramón Alvarado, for appellee.