312 Ga. 332
FINAL COPY

S21A0965.  WALKER v. THE STATE.

NAHMIAS, Chief Justice.

Appellant Quintavious Kerry Walker was convicted of the murder of Jaquille Thomas and Angelique Bowman. In this appeal, his only contention is that the trial court erred by admitting into evidence at his trial incriminating statements that he made after he allegedly invoked his Fifth Amendment right to remain silent during a custodial interview with the police. But the trial court's finding that Appellant's purported invocations were not unambiguous and unequivocal is not clearly erroneous, and the court therefore did not commit plain error by admitting the statements. We affirm.[1]

---

[1] The crimes occurred on January 24, 2016. In May 2016, a Gwinnett County grand jury indicted Appellant for felony murder of Thomas, malice and felony murder of Bowman, and two counts of aggravated assault. At a trial from October 8 to 11, 2018, the jury found Appellant guilty of all charges. The trial court sentenced him to serve life in prison for the felony murder of Thomas

1. The evidence presented at Appellant's trial showed that Thomas and Bowman were a young couple who, on the night of January 24, 2016, went with Appellant to a residential neighborhood in Norcross to sell a gun to an unidentified third party. Before that person arrived, Appellant shot Thomas twice, killing him, and then shot Bowman twice, killing her too.

A month after the shootings, Appellant was arrested and taken to the Gwinnett County Police headquarters for a custodial

---

and a consecutive life sentence for the malice murder of Bowman. The court purported to merge the remaining counts, although the felony murder count relating to Bowman was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 373 (434 SE2d 479) (1993). Appellant filed a timely motion for new trial, which he amended through new counsel in March 2019. After a hearing, the trial court entered an order denying the amended motion in April 2019. Through his current counsel, Appellant filed a second amended motion for new trial in December 2019. After a hearing, the trial court entered an order denying the second amended motion in September 2020. In the same order, the trial court corrected its sentencing error by vacating the felony murder count relating to Bowman.

Appellant then filed a notice of appeal, and the case was initially docketed to this Court's April 2021 term. However, we dismissed the appeal, explaining that the trial court had never formally vacated its initial April 2019 order denying the motion for new trial, so that order remained operative and the appeal was untimely. See Case No. S21A0509 (Jan. 11, 2021). The trial court then filed an order vacating the April 2019 order and reopening the evidence, nunc pro tunc to June 13, 2019, and Appellant filed a motion for an out-of-time appeal, which the trial court granted. Appellant then filed a timely notice of appeal, which he amended in March 2021, and the case was docketed to this Court's August 2021 term and submitted for a decision on the briefs.

interview, which was video-recorded and played for the jury at trial in redacted form. During the interview, Appellant admitted that he shot Thomas and Bowman, claiming that he shot Thomas because Thomas tried to rob him before the gun sale and then shot Bowman to eliminate her as a witness. Appellant's admissions were corroborated by surveillance video recordings of the crime scene and incriminating information found on his cell phone. He did not testify at trial.

2. In this Court, Appellant's only contention is that the trial court erred by admitting his statements confessing to the shootings because those statements were elicited after he invoked his right to remain silent under the Fifth Amendment to the United States Constitution. This contention cannot be sustained, especially under the plain-error standard by which we review it.

(a) About 20 minutes into the video-recorded custodial interview, Detective David Brucz read Appellant his *Miranda*[2]

---

[2] See *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

3

rights. The detective then asked Appellant, "you said you understand all that?" Appellant responded, "I know what's going on." The detective asked, "so you're willing to talk?" Appellant answered, "yeah." Detective Brucz proceeded to ask questions about Appellant's relationship with Thomas. Appellant's statements admitting that he killed the victims began about an hour and nine minutes into the interview. The interview ended about 17 minutes later.

In a motion to suppress and at a pretrial *Jackson-Denno*[3] hearing, Appellant challenged the admission of his incriminating statements on multiple grounds, but he never asserted a Fifth Amendment claim regarding the alleged invocation of his right to remain silent; Appellant also testified at the hearing but said nothing about invoking his right to silence. The trial court denied the suppression motion, and a redacted version of the video recording of the interview was then admitted into evidence at Appellant's trial, with Appellant objecting only on grounds that he

---

[3] See *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

had raised at the pretrial hearing. No transcript of the recording was admitted or used at trial or in the pretrial or post-trial proceedings.

In Appellant's second amended motion for new trial, he asserted for the first time that he had invoked his right to remain silent during the interview when he supposedly said, about 40 minutes after waiving his *Miranda* rights: "I just want to go to jail. I don't wanna talk no more." Appellant also asserted that he invoked his right to remain silent again when he supposedly said, about six minutes later: "I don't even wanna talk." Appellant claimed that because his incriminating statements occurred after these invocations, the trial court plainly erred by admitting those statements into evidence at the trial.

In its September 2020 order denying Appellant's second amended motion, the trial court ruled that, based on hearing the recording played during the trial and reviewing it again with a focus on the two purported invocations, Appellant "did not clearly and unequivocally invoke his right to silence." As to the first, the court found that it was unclear precisely what Appellant said, but he

5

appeared to say that he "doesn't want to go to jail." However, his voice trailed off, and the second half of his statement was difficult to understand even after repeated listening. As to the second purported invocation, the court found that after Detective Brucz and another officer confronted Appellant with more evidence that they had uncovered, Appellant appeared to say, "Bro, I don't even want to talk about it." The court noted that Appellant then willingly continued to engage in conversation with the officers. The court concluded that the surrounding context made it seem that this statement was made in response to a specific topic rather than the interrogation as a whole and that the statement was "neither an unequivocal nor a clear request to terminate the interrogation."

The trial court also expressly credited the testimony given at the hearing on the motion by the prosecutor who tried the case, Appellant's trial counsel, and Detective Brucz. The prosecutor testified that she had reviewed the interview recording multiple times and "never perceived anything that she understood as an invocation of [Appellant's] *Miranda* rights." Appellant's trial

counsel, who viewed the recording at least three times, testified that based on his memory of the recording, "he either did not hear, did not understand, or did not perceive an issue with [Appellant's] statements." Detective Brucz testified that, although Appellant had muttered something under his breath, the detective did not hear or understand it as an invocation of the right to remain silent or a request to terminate the interview and that even after reviewing the recording, he still did not perceive any clear or unequivocal invocations. The court noted that it saw no reason why a "reasonable officer" would have reached a different conclusion than Detective Brucz.

The trial court explained that Appellant's purported invocations were

> difficult to understand even upon repeated listening. Even assuming that [Appellant] did say he no longer wanted to talk, such a statement was made while he was mumbling and almost whispering. He made no effort to clarify or reinforce that statement when officers continued to engage with him.

The court concluded, after listening to the recorded statements in the pretrial *Jackson-Denno* hearing, at trial, and again at the second

7

amended motion for new trial hearing with particular focus on the statements, that Appellant's purported invocations were not entirely clear, and the "context render[ed] them equivocal."

(b) Because Appellant did not raise this particular suppression claim before or during his trial, we review the claim only for plain error. See *McKinney v. State*, 307 Ga. 129, 133 (834 SE2d 741) (2019); OCGA § 24-1-103 (d).

> To establish plain error, Appellant "must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings."

*McKinney*, 307 Ga. at 134 (citation omitted). "We need not analyze all of the elements of this test when, as in this case, [Appellant] has failed to establish one of them." *State v. Herrera-Bustamante*, 304 Ga. 259, 264 (818 SE2d 552) (2018). Appellant has not established that the trial court's ruling admitting his statements into evidence was a clear error.

We have explained that

when a person in the custody of law enforcement officers

8

unambiguously and unequivocally invokes his right to remain silent in connection with their interrogation, the interrogation must cease immediately. Whether an invocation is unambiguous and unequivocal "depends on whether the accused articulated a desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent."

*Davidson v. State*, 304 Ga. 460, 469-470 (819 SE2d 452) (2018) (citations omitted).

When reviewing a trial court's ruling on a suppression issue,

an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. This means that the reviewing court generally must accept the trial court's findings as to disputed facts unless they are clearly erroneous, although the reviewing court may also consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility such as facts indisputably discernible from a videotape.

*State v. Clark*, 301 Ga. 7, 8 (799 SE2d 192) (2017) (citation and punctuation omitted). See also *State v. Mohammed*, 304 Ga. App. 230, 231 (695 SE2d 721) (2010) (explaining that de novo appellate review of a video recording applies only "'[t]o the extent that the

controlling facts . . . are undisputed because they are plainly discernible from the . . . video recording'" (citation omitted)).

Appellant argues that de novo review of the trial court's findings is appropriate here, because this Court can review the video recording of his interview. But the words that Appellant said during the pertinent portions of the recording are by no means "indisputably discernible." At best, Appellant's version of his mumbled statements *may* be discernible – if one knows exactly what to listen for and listens to the recording repeatedly at high volume. It is not plainly discernible that the purported invocations would have been unambiguous and unequivocal – or even audible – when heard once in real time by a reasonable officer interviewing Appellant.

Thus, what exactly Appellant said during the pertinent portions of the video recording and how clear whatever he said would have been to the officers interviewing him are disputed facts, so we will defer to the trial court's finding that Appellant failed to clearly and unequivocally invoke his right to remain silent – a

finding that is not clearly erroneous as it was supported by the trial court's own repeated review of the recording as well as the testimony of three witnesses who heard the recording repeatedly, one of whom also heard Appellant's statements directly. The trial court therefore did not commit a clear error by admitting Appellant's incriminating statements into evidence, and Appellant has accordingly failed to establish plain error. See *Raheem v. State*, 275 Ga. 87, 93-94 (560 SE2d 680) (2002) ("[T]he relevant portion of Raheem's videotaped statement was difficult, if not impossible to understand . . . . Under these circumstances and given the testimony heard by the trial court, this Court concludes that the trial court's finding that Raheem had not made any reference to whether his statement could be used in a courtroom was not clearly erroneous. Accordingly, Raheem's legal argument premised on a factual assertion to the contrary must fail."), disapproved on other grounds, *Patel v. State*, 282 Ga. 412, 413 n.2 (651 SE2d 55) (2007). See also *Sparks v. Commonwealth*, No. 2017-SC-000206-MR, 2017 WL 6379636, at *3 (Ky. Dec. 14, 2017) (holding that a defendant's "inaudible mumbling

11

was not an invocation of his right to remain silent"); *State v. Newell*, 132 P3d 833, 842 (Ariz. 2006) (holding that a defendant's "barely audible, mumbled statement made while [the defendant] and the detective were both talking" was not a "sufficiently clear invocation of the right to counsel under *Miranda*"); *People v. Kuns*, No. F035946, 2002 WL 220626, at *6 (Cal. Ct. App. Feb. 13, 2002) (declining to presume that a defendant's "silence and mumbled answers" constituted invocations of the right to remain silent).

*Judgment affirmed. All the Justices concur.*

Decided August 24, 2021.

Murder. Gwinnett Superior Court. Before Judge Conner.

*The Geary Law Firm, Kelsey L. Geary, Donald P. Geary*, for appellant.

*Patsy A. Austin-Gatson, District Attorney, Lee F. Tittsworth, Christopher M. DeNeve, Tristan W. Gillespie, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kathleen L. McCanless, Assistant Attorney General*, for appellee.