**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 20, 2021**

# In the Court of Appeals of Georgia

A21A0900. MARTIN v. THE STATE.

HODGES, Judge.

Following a jury trial, the Superior Court of Forsyth County entered a judgment of conviction against Josh Martin for one count each of aggravated assault (family violence) (OCGA § 16-5-21 (a), (i)) and false imprisonment (OCGA § 16-5-41). Martin appeals from the trial court's denial of his motion for new trial, arguing that: (1) the evidence was insufficient to support his aggravated assault conviction; (2) the trial court erred in admitting a prior conviction to show intent when intent was not an issue; and (3) the trial court erred in imposing a $5,000 attorney fees restitution award without a hearing. Although we find no error related to Martin's first two arguments, we conclude that the trial court failed to properly analyze Martin's ability to pay the

attorney fees restitution award. Therefore, we affirm in part, vacate in part, and remand this case for further proceedings consistent with this opinion.

Viewed in a light most favorable to the verdict,[1] the evidence revealed Martin and the victim lived together and had a tumultuous relationship. The victim confided in a friend that she stayed in her room most of the time because Martin did not want her going anywhere or speaking with anyone. The victim stated that, on occasion, Martin would cover her nose and mouth to prevent her from screaming, that she would kick the walls to try and alert others but received no assistance, and that Martin told her, "that's what [you] get for trying to leave." Martin often threatened the victim — and physically attacked the victim — if she ever expressed a desire or tried to leave the residence without him or to leave the relationship.

After living in a motel, her daughter's trailer, and a friend's house over the course of a few months, the victim moved into a residence in Forsyth County with Martin. On the date charged in the indictment in this case, Martin struck the victim in the head after she dropped a cigarette on him. He told her to get dressed and to come outside. As she did so, she grabbed a small pocketknife and held it at her side, unsure if Martin intended to beat her again. But as she exited the trailer, Martin struck

---

[1] See, e.g., *Wilkerson v. State*, 345 Ga. App. 652, 653 (813 SE2d 180) (2018).

2

the victim in the back of the head, knocking her unconscious; a neighbor saw Martin "knock [the victim] in the side of the head" and did not see Martin use a weapon of any kind. When she awoke, the victim did not see anyone nearby, so she ran, screaming for help. The neighbor telephoned police. Martin initially claimed that nothing had happened with the victim, but then stated that he struck the drunken victim in self-defense to repel her attack.

A Forsyth County grand jury indicted Martin for one count each of aggravated assault (family violence) and false imprisonment. On the day of trial, and after the jury had been seated, Martin attempted to change his plea to guilty. The trial court rejected Martin's proposed guilty plea because he refused to admit guilt, and a jury found him guilty of both counts. One of the general conditions of Martin's sentence of probation was to reimburse the county $5,000 for his legal expenses. The trial court denied Martin's motion for new trial as amended, and this appeal followed.

1. In his first enumeration of error, Martin contends that the evidence was insufficient to support his conviction for aggravated assault because there was no

proof that his hands were likely to cause, or did cause, bodily injury. We do not agree.[2]

Under Georgia law,

> [w]hen a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. And in evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. The jury's verdict will be upheld, then, so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

(Citations and punctuation omitted.) *Smith v. State*, 354 Ga. App. 882, 884 (1) (842 SE2d 305) (2020). A person commits aggravated assault when he assaults another "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). "[W]hether [Martin's] hands and fists were objects

---

[2] Martin does not challenge the sufficiency of the evidence for his false imprisonment conviction.

4

used in a manner likely to result in serious injury was a question of fact for the jury to determine." *Hewitt v. State*, 277 Ga. 327, 331 (1) (e) (588 SE2d 722) (2003), overruled on other grounds by *Manley v. State*, 287 Ga. 338, 345 (3) (698 SE2d 301) (2010).

Here, Martin's indictment charged him with making "an assault upon the [victim] . . . with the hands and fists of the accused . . . by striking [the victim] on and about the head. . . ." The victim testified that Martin, with whom she lived, "beat" her in the back of the head, while a neighbor saw Martin "knock [the victim] in the side of the head, and [the victim] go down to the ground." The victim also stated that she "just fell" when Martin struck her in the head the second time, and that "when [she] opened [her] eyes again, all [she] saw was the rain and the mud."[3] From this evidence, the jury was authorized to find Martin guilty beyond a reasonable doubt of aggravated assault (family violence) for using his hands and fists to strike the victim. See generally *Smith*, 354 Ga. App. at 885 (1); *Ferguson v. State*, 322 Ga. App. 565, 566-567 (1) (745 SE2d 784) (2013); cf. *Young v. State*, 332 Ga. App. 361, 362 (1) (772

---

[3] During closing arguments, Martin's trial counsel noted that the victim "got struck with the way people fight, right or wrong, with a fist."

5

SE2d 807) (2015) (affirming conviction for aggravated battery in which defendant struck correctional officer in the head, knocking officer unconscious).

2. Next, Martin argues that the trial court erred in admitting a 16-year-old prior conviction for family violence battery to show intent when intent was not an issue at trial. We find no plain error.

Prior to trial, the State filed a notice of its intent to introduce other acts evidence concerning a 2001 incident, for which Martin was charged with aggravated assault against his mother, to show his "intent, knowledge, and lack of mistake. . . ." In a pretrial hearing, the State indicated that the other act was based upon an incident in which Martin threatened his mother with a knife and that it would tender a certified copy of Martin's conviction. Martin replied, arguing that the events were too dissimilar and that a certified copy of his conviction, absent a testifying witness, was insufficient to prove he actually committed the other act. After conducting an analysis based upon OCGA § 24-4-404 (b) ("Rule 404 (b)"), the trial court allowed the evidence of Martin's 2001 conviction.[4]

---

[4] In contrast, the trial court did not allow evidence of an additional other act in which Martin was involved in an altercation with his former spouse.

During trial, the State tendered a certified copy of Martin's conviction. In response, Martin initially asked for a general limiting instruction on prior acts. After the trial court reviewed the pattern charge, Martin asked the court to "reconsider putting this in at all" based upon testimony from the arresting officer that Martin admitted striking the victim in the instant case. After further discussion, the trial court indicated that it would mention intent only in its charge and that intent would be "the basis of the other crime, wrong or act." The trial court then admitted, over Martin's objection, a certified copy of Martin's 2001 conviction for aggravated assault (family violence) against his mother. The trial court followed the evidence by giving a limiting instruction.

> OCGA § 24-4-404 (b) provides:
>
> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

To evaluate the admissibility of other acts evidence, we apply a three-part analysis: "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; and

7

(3) the government must offer sufficient proof so that the jury could find that defendant committed the act." (Citation, punctuation, and emphasis omitted.) *Chambers v. State*, 351 Ga. App. 771, 775 (2) (833 SE2d 155) (2019).

> As to the first factor, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As to the second factor, even if Rule 404 (b) evidence is relevant, we must still decide whether "the probative value of the other acts evidence is substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403."

(Citations omitted.) Id. at 775-776 (2). We review the admission of other acts evidence for a clear abuse of discretion. Id. at 776 (2).

We note that Martin does not argue that the first factor of the other acts evidence analysis — relevance — was not satisfied. Therefore, we look only to the second and third factors, about which Martin presented argument on appeal.

(a) *Probative Value v. Prejudicial Effect*. Martin contends that the other acts evidence had no probative value because he admitted to hitting the victim and that, as a result, "it took the burden off of the State [to prove intent] entirely." We are not persuaded.

Under this factor,

8

if the evidence is found to be relevant, the evidence is subject to the balancing test set forth in Rule 403 to determine whether its admission is more probative than prejudicial. But, Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence. And, in close cases, balance under Rule 403 should be struck in favor of admissibility.

(Citations and punctuation omitted.) *Cross v. State*, 354 Ga. App. 355, 362-363 (2) (b) (839 SE2d 265) (2020).

(i) *Ordinary Appellate Review*. As an initial matter, we note that Martin failed to object to the trial court's admission of the other acts evidence based upon the absence of intent as an element needing to be proven at trial. As a result, ordinary appellate review of this issue has been waived.[5] See *State v. Herrera-Bustamante*, 304 Ga. 259, 263 (2) (a) (818 SE2d 552) (2018) ("the general rule [is] that objections to

---

[5] As we previously observed, Martin initially argued that the other acts were too dissimilar and that a certified copy of Martin's conviction was insufficient. Martin also did not include any argument concerning an absence of intent in his original motion for new trial. But in his amended motion for new trial, which did not include a supporting brief, Martin argued that, "since intent was not at issue, evidence of the defendant's previous acts against the victim were improperly admitted" (despite the fact that the other acts evidence did not involve the same victim). However, neither Martin's "Second Amended Motion for New Trial" nor his supporting brief included this argument. Finally, this argument was not raised during Martin's hearing on his motion for new trial as amended.

the admission of evidence must be raised in a timely fashion at trial for the objection to be preserved for ordinary appellate review.").

(ii) *Plain Error*. However, "[t]he unavailability of ordinary review does not end our analysis of [Martin's] evidentiary claim," *Herrera-Bustamante*, 304 Ga. at 263 (2) (b), because "our new Evidence Code permits plain error review of certain unpreserved evidentiary errors affecting substantial rights." (Citation and punctuation omitted.) *Adams v. State*, 306 Ga. 1, 3 (1) (829 SE2d 126) (2019); see also OCGA § 24-1-103 (d). To show plain error,

> there must [first] be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation, emphasis, and punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); see also *Herrera-Bustamante*, 304 Ga. at 264 (2) (b). "[T]he

burden of establishing plain error falls squarely on the defendant[,]" and "satisfying the plain-error standard is difficult, as it should be[.]" (Citations and punctuation omitted.) *State v. Crist*, 341 Ga. App. 411, 415 (801 SE2d 545) (2017).

Pretermitting the remaining prongs of the plain-error analysis, we conclude that Martin cannot demonstrate the first prong: that "there must [first] be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant." (Citation and punctuation omitted.) *Kelly*, 290 Ga. at 33 (2) (a). In large part, the success of Martin's argument hinges upon his claim that his defense at trial was that he acted in self-defense: he admitted hitting the victim, such that intent was no longer at issue and the probative value of the other acts evidence, therefore, was extremely low. See *Strong v. State*, 309 Ga. 295, 310 (2) (d) (1) (845 SE2d 653) (2020) (reversing defendant's conviction upon finding that trial court erred in admitting other acts evidence because, "although Appellant put his intent at issue by pleading not guilty, . . . the State's need for evidence to prove his intent was extremely low because his sole defense at trial was self-defense") (citation and punctuation omitted); *Brown v. State*, 303 Ga. 158, 162 (2) (810 SE2d 145) (2018) (reversing defendant's conviction after concluding trial court erred in admitting other acts evidence because, "in light

11

of Brown's self-defense claim, the probative value of the other acts evidence was extremely low at best"). However, this characterization of Martin's trial defense is inaccurate.

First, Martin did not take any affirmative steps at trial to remove intent as an issue by specifically adopting a strategy of self-defense.[6] See, e.g., *Parks v. State*, 300 Ga. 303, 307 (2) (794 SE2d 623) (2016) ("Since the defendant admitted the shooting *and claimed only that in doing so he acted in self-defense*, the only factual issue in the case was whether that was the reason for the admitted act.") (citation and punctuation omitted; emphasis supplied); see also *Chynoweth v. State*, 331 Ga. App. 123, 128 (3) (768 SE2d 536) (2015). At the outset, Martin gave conflicting statements to law enforcement officers, first claiming that nothing had transpired between himself and the victim and later asserting that he struck the victim to parry her drunken attack. In short, then, Martin essentially argued that *if* he struck the victim, the victim was the aggressor who pulled a knife, which made intent a central issue.

Second, Martin's defense at trial centered upon discrediting the victim through cross-examination and sowing resultant reasonable doubt. As a result, "the probative

---

[6] In fact, Martin did not request, and the trial court did not give, a jury instruction on self-defense.

value of the other acts was great because the State had a strong need for the evidence to combat [Martin's] attacks on the victim's credibility. . . ." (Citation and punctuation omitted.) *Cross*, 354 Ga. App. at 363 (2) (b). Under these circumstances, we cannot say that Martin has demonstrated that, by admitting the other acts evidence, the trial court erred or deviated from a legal rule to support a finding of plain error.

(b) *Identity*. Relying chiefly upon cases decided prior to our current evidence code, Martin next argues that the trial court erred in admitting a certified copy of his prior conviction because it did not adequately describe the other acts evidence. Contrary to Martin's argument, however, we have previously held that admission of a certified copy of a defendant's prior conviction is sufficient to satisfy the third prong of the other acts evidence analysis. See *Burgess v. State*, 349 Ga. App. 635, 641 (3) (824 SE2d 99) (2019), overruled on other grounds, *Hill v. State*, 2021 Ga. App. LEXIS 318, *5, n. 4 (June 25, 2021). Accordingly, we find no abuse of the trial court's discretion.

3. Finally, Martin asserts that he should be resentenced because the $5,000 attorney fee reimbursement award was made without a hearing to evaluate his financial hardship. In part, we agree.

13

OCGA § 17-12-51 (a)[7] provides that

> [w]hen a defendant who is represented by a public defender, who is paid in part or in whole by a county, enters a plea of nolo contendere, first offender, or guilty or is otherwise convicted, the court may impose as a condition of probation repayment of all or a portion of the cost for providing legal representation and other expenses of the defense if the payment does not impose a financial hardship upon the defendant or the defendant's dependent or dependents.

To that end,

> [i]n determining whether or not a payment imposed under this Code section imposes a financial hardship upon a defendant or defendant's dependent or dependents and in determining the amount of the payment to impose, the court shall consider the factors set forth in [OCGA §] 17-14-10.[8]

---

[7] The current version of OCGA § 17-12-51 became effective July 1, 2015 following an earlier recodification of certain criminal procedure statutes. Prior to that date, the reimbursement of a governing body for representation by a public defender was controlled by an earlier version of OCGA § 17-12-10, which provided that, "[t]o the extent that a person covered under this Code section is able to provide for the employment of an attorney, the other necessary services and facilities of representation, and court costs, the court concerned may order him to provide for this payment or reimbursement." OCGA § 17-12-10 (c) (2003) (effective until Dec. 31, 2003); see also *Miller v. State*, 221 Ga. App. 718, 721 (2) (472 SE2d 697) (1996) (noting that former OCGA § 17-12-10 (c) did not expressly require a hearing).

[8] (a) In determining the nature and amount of restitution, the ordering authority shall consider:

OCGA § 17-12-51 (d). In evaluating a defendant's ability to pay under such circumstances, the trial court must "inquire and determine such facts as the amount

(1) The financial resources and other assets of the offender or person ordered to pay restitution including whether any of the assets are jointly controlled;

(2) The earnings and other income of the offender or person ordered to pay restitution;

(3) Any financial obligations of the offender or person ordered to pay restitution, including obligations to dependents;

(4) The amount of damages;

(5) The goal of restitution to the victim and the goal of rehabilitation of the offender;

(6) Any restitution previously made;

(7) The period of time during which the restitution order will be in effect; and

(8) Other factors which the ordering authority deems to be appropriate.

OCGA § 17-14-10 (a).

15

of defendant's income, assets, expenses, and outstanding obligations so as to have some basis for finding ability to pay or reimburse." *Miller*, 221 Ga. App. at 721 (2). A hearing is not required, however, if,

> [b]y the time of sentencing of an indigent defendant who has had to supply financial data in order to qualify for appointment of counsel and who may have been subject to a presentence investigation, the [trial] court [has] enough information to serve as an adequate basis for ordering reimbursement. The [trial] court can put this basis into the record.

Id.

Here, as a general condition of probation, the trial court ordered Martin to pay $5,000 in attorney fees to Forsyth County. At the conclusion of Martin's sentencing hearing, the trial court stated that "[t]here will be a reimbursement to the county for appointed fees. . . . I'm just going to say not to exceed [$]5,000."[9] Although the trial court may well have had "enough information to serve as an adequate basis for

---

[9] The trial court added that the reimbursement would include "a rate of pay no less than $150 a month[,] [b]ut I will give you a grace period of 60 days after your release from incarceration to allow you to get out and get a job and go to work so you can begin to pay." Absent an intervening circumstance, the record suggests that Martin — whose May 11, 2018 sentence included a term of 2 years imprisonment — has completed the incarceration portion of his sentence.

16

ordering reimbursement[,]" the record does not include the trial court's conclusion concerning Martin's ability to pay a reimbursement award, any information in support of the conclusion, or any consideration of the factors outlined in OCGA § 17-14-10 (a). *Miller*, 221 Ga. App. at 721 (2). Rather, there is only the rote imposition of an attorney fee reimbursement without any inquiry.

While neither OCGA § 17-12-51 (d), OCGA § 17-14-10 (a), nor our cases require a hearing to evaluate an indigent defendant's ability to pay an attorney fee reimbursement award, such a hearing during sentencing is a preferred practice. Nevertheless, at a minimum, the trial court should note — on the record — whether an attorney fee reimbursement award would "impose a financial hardship upon the defendant or the defendant's dependent or dependents," OCGA § 17-12-51 (d); any "information to serve as an adequate basis for ordering reimbursement[,]" *Miller*, 221 Ga. App. at 721 (2); and a consideration of the factors codified at OCGA § 17-14-10 (a). In view of the absence of these findings in this case, we vacate the trial court's attorney fees reimbursement condition of probation and remand the case to the trial court for further proceedings consistent with this opinion.[10]

---

[10] We did not require a remand in *Miller* because the trial court made a finding that the defendant "was *presently able* to make the reasonably-scheduled future payment." (Emphasis in original and supplied.) 221 Ga. App. at 723 (2). No such

17

In sum, we conclude that the evidence was sufficient to support Martin's conviction for aggravated assault. We also find no abuse of discretion in admitting evidence of Martin's 2001 conviction for aggravated assault (family violence). However, we conclude that the trial court failed to adequately inquire into Martin's ability to pay the $5,000 attorney fees restitution award. Therefore, we affirm the trial court's denial of Martin's motion for new trial as amended, vacate the general condition of probation imposing a reimbursement of $5,000 in attorney fees, and remand the case for further proceedings consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded. Miller, P. J., and Pipkin, J., concur*.

---

initial finding was made in this case.