**THIRD DIVISION
DOYLE, P. J.,
HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 6, 2025**

# In the Court of Appeals of Georgia

A24A1529. LOSURDO v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, John Losurdo was convicted of driving under the influence of alcohol ("DUI") under OCGA § 40-6-391 (a) (5) (per se), DUI under OCGA § 40-6-391 (a) (1) (less safe),[1] and failure to maintain his lane.[2] After his motion for new trial was denied, Losurdo filed this appeal, contending that the trial court erred by denying his motion to suppress the results of a breath test administered after his arrest. Specifically, he challenges the trial court's ruling that he voluntarily

---

[1] The DUI less safe count was merged with the DUI per se count for sentencing.

[2] See OCGA § 40-6-48.

consented to the breath test despite being read a misleading implied consent notice. Because the record supports the trial court's ruling, we affirm.

The evidence is not materially disputed and shows that in October 2017, a deputy on duty with the Forsyth County Sheriff's Office observed Losurdo drift into the deputy's lane while driving on a highway at approximately 12:55 a.m. The deputy then observed Losurdo follow the car in front of him too closely and continue to fail to maintain his lane several times. The deputy executed a traffic stop, and Losurdo immediately pulled into the gore area at an exit.

The deputy asked Losurdo to exit his vehicle and extinguish his cigarette, which Losurdo did "politely." The deputy observed an odor of alcohol about Losurdo's face and asked him how much he had had to drink; Losurdo replied that he had consumed two margaritas approximately one hour before. The deputy explained that he wanted to "evaluate [Losurdo] to make sure he was safe to operate the vehicle," and Losurdo "was very polite and consensual . . . and allowed me to conduct the standardized field sobriety evaluation with him." After Losurdo exhibited a positive result on a field alcosensor device, six out of six clues on the horizontal gaze nystagmus, and four out

of eight clues on a walk-and-turn test, the deputy informed Losurdo that he would be placed under arrest for DUI.

After securing Losurdo in handcuffs with his hands in front of his body, the deputy read him the Georgia implied consent notice for people over the age of 21. The statutory notice read by the deputy is as follows:

> Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs.

> If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum of one year. *Your refusal to submit to the required testing may be offered into evidence against you at trial.*[3]

> If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum of one year.

> After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine or other bodily

---

[3] (Emphasis supplied.)

substances at your own expense and from qualified personnel of your own choosing.

Will you submit to the state administered chemical tests of your [breath] under the implied consent law?[4]

After the deputy read the implied consent notice, Losurdo responded, "yeah, I guess — I don't know what the best decision is here."[5] The deputy did not promise Losurdo anything in exchange for taking the test, nor did he threaten Losurdo physically. Likewise, Losurdo did not ask for clarification or indicate that he would like to change his mind, even during transport to, or after arrival at, the jail where the

---

[4] This language tracks that found in OCGA § 40-5-67.1 (2017).

[5] This quote was found by the trial court and memorialized in its order based on video evidence. It differs from the deputy's testimony, which simply stated that Losurdo said, "sure, I'll take the test." We defer to the trial court's factual findings on a motion to suppress, see *Williams v. State*, 301 Ga. 60, 61 (799 SE2d 779) (2017), and the deputy's video recording of the traffic stop is consistent with the trial court's finding. See *Ellis v. State*, 312 Ga. 243, 247 (1) (862 SE2d 279) (2021) ("An appellate court generally reviews a trial court's factual findings and determinations of credibility for clear error; however, 'where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo.'").

test was administered on an Intoxilyzer 9000. The breath test indicated a result of .096 blood alcohol concentration.[6]

Losurdo was charged with DUI less safe, DUI per se, and failure to maintain his lane. He filed a motion in limine and to suppress the results of the Intoxilyzer breath test, and following an evidentiary hearing at which both he and the arresting officer testified, the trial court ruled that Losurdo had voluntarily consented to the breath test. A jury trial ensued, and Losurdo was found guilty as to each count. Losurdo moved for a new trial, which motion was denied. Losurdo then moved the court to vacate and reconsider its order in light of a newly decided case, *Elliott v. State*,[7] which held that a driver's refusal to take the state-administered breath test cannot be admitted at trial, contradicting language in this case's implied consent notice stating otherwise.[8] The trial court vacated its order, and upon review of the new case law, the trial court again held that Losurdo had consented to the breath test under the totality

---

[6] This was the lower result of two breath samples measured.

[7] 305 Ga. 179 (824 SE2d 265) (2019).

[8] See id. at 223 (IV) (E).

of the circumstances of his arrest, despite the misleading nature of the implied consent warning. Losurdo now appeals.

Losurdo contends that the trial court erred by ruling that his consent pursuant to the implied consent notice was voluntary. In particular, Losurdo correctly points out that the implied consent notice wrongly stated that the driver is "required" to consent to a breath test, and that his refusal may be admitted against him at trial.[9] Based on these errors, he argues that his roadside consent to the breath test — obtained after being read the misleading implied consent notice — was involuntary.

---

[9] As noted above, Losurdo's 2018 trial preceded *Elliott* and its holding that "[t]he protection against compelled self-incrimination provided by Article I, Section I, Paragraph XVI of the Georgia Constitution does afford the right to refuse [a breath] test. [Therefore,] Paragraph XVI gives [drivers] the protection that the Fifth Amendment does not, and thus renders invalid the portions of [Georgia] statutes allowing [their breath test] refusal to be admitted against [them in criminal prosecutions]." See also *Blazek v. State*, 364 Ga. App. 128, 131 (874 SE2d 165) (2022) ("There is no dispute that the implied consent notice improperly advised Blazek that he was required to submit to a breath test and that his refusal to consent to a breath test could be used against him at trial."). Under the circumstances here, given Losurdo's timely challenge to the evidence and the trial court's application of *Elliott,* we need not further address the timing of *Elliott*. See generally *State v. Herrera-Bustamante*, 304 Ga. 259, 262-263 (2) (a) (818 SE2d 552) (2018) ("[U]nder the so-called 'pipeline' rule, Georgia appellate courts will apply 'a new rule of criminal procedure to all cases then on direct review or not yet final.'").

Nevertheless, this Court already has held that "the inclusion of misleading information in the implied consent notice does not render the notice unconstitutionally coercive on its face."[10] Instead, "[i]n the wake of *Elliott*, [it remains true] that 'the appropriate inquiry [is] whether the defendant's consent to the [breath] test was voluntary under the totality of the circumstances.'"[11] Such factors include

> the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.[12]

Here, as noted above, it is undisputed that the arresting deputy did not promise anything to Losurdo or threaten him. Based on the deputy's vehicle dash cam video, the entire interaction between Losurdo and the deputy was cooperative and even cordial. Losurdo already had been informed that he was under arrest, so his decision to take the breath test was not conditioned on arrest. Further, Losurdo was coherent

---

[10] *Luna-Galacia v. State*, 369 Ga. App. 142, 148 (1) (b) (892 SE2d 50) (2023).

[11] Id. at 146 (1).

[12] (Citation and punctuation omitted.) *Olevik v. State*, 302 Ga. 228, 251 (3) (b) (806 SE2d 505) (2017).

and capable of communicating without difficulty; he had one semester of college education; he was not subject to a lengthy detention prior to his consent; and although he had not been read his *Miranda* rights, the deputy handcuffed Losurdo in front of his body instead of behind the back to minimize his confinement due to his cooperative demeanor. Finally, the deputy allowed Losurdo time to think through his decision, explaining that he was not forcing a particular choice and just needed to know Losurdo's answer.

These circumstances mirror those in other post-*Elliott* cases where we have affirmed the trial court's determination that, under the totality of the circumstances, a driver's consent was constitutionally valid.[13] "[A]lthough the reading of an inaccurate implied consent notice may be one factor relevant in determining the voluntariness of consent to a breath test, 'the trial court also must consider [other] factors'" as part of the totality of the circumstances.[14] It is clear that the trial court did

---

[13] See, e.g., *Luna-Galacia*, 369 Ga. App. at 148-149 (1) (b), (c), (d); *Fofanah v. State*, 355 Ga. App. 895, 898 (846 SE2d 154) (2020). But see *Luna-Galacia*, 369 Ga. App. at 152 (Gobeil, J., concurring) ("[A]s interpreted by our Supreme Court, the implied consent notice at issue is plain wrong — and on what may be the two most salient points: 'Do I have to [submit to the test]?' and 'What if I don't?'").

[14] See *Luna-Galacia*, 369 Ga. App. at 148 (1) (b).

so, and its determination that Losurdo's consent was voluntary under all of the circumstances is supported by the record. Under the appropriate standard of review,

> this Court must accept the trial court's factual [and credibility] findings unless clearly erroneous and must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. Based on this . . . , we cannot say that the evidence demanded a finding contrary to the trial court's ruling, and thus we find no abuse of discretion by the trial court in denying [Losurdo's] motion to [exclude the result of his breath test].[15]

Accordingly, we discern no basis for reversal in this case.

*Judgment affirmed. Hodges and Watkins, JJ., concur.*

---

[15] *Fofanah*, 355 Ga. App. at 898.